IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NGX COMPANY,

    Plaintiff,

vs.                                                                   Civil No. 05-1120 WJ/RLP

G.B. PETROLEUM SERVICES, L.L.C.,
GREAT BASIN PETROLEUM SERVICES, L.P.,
and GREAT BASIN PETROLEUM SERVICES, INC.,

    Defendants.

**MEMORANDUM OPINION AND ORDER ON DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
PLAINTIFF'S CLAIM FOR LOST OIL PRODUCTION**

THIS MATTER comes before the Court pursuant to Defendants' Motion for Partial Summary Judgment as to NGX Company's Claim for Lost Oil Production (Doc. 133). Having reviewed the submissions of the parties and being fully advised on the law, I conclude that the motion is well taken in part and will be granted in part and will otherwise be denied.

**BACKGROUND**

Plaintiff's Second Amended Complaint alleges that Defendants had a contract with Plaintiff to haul produced water from NGX oil wells and that Defendants improperly disposed of produced water in a workover pit at one of NGX's work sites. Plaintiff further alleges that Defendants failed to remediate the workover pit when NGX requested. The causes of action brought by Plaintiff include claims for breach of contract, statutory trespass, common law trespass, private nuisance, slander of title, violation of the Unfair Practices Act, negligence, equitable relief and civil conspiracy to slander title. Among the resulting harms for which

Plaintiff seeks damages are lost oil production at the Tecolote St. #1, 2d Am. Compl. ¶ 20 and Pretrial Order (PTO) p. 5, lost oil production generally, 2d Am. Compl. ¶ 57, and lost oil production at Experimental No. 1, PTO p. 5.

Defendants filed the instant motion for partial summary judgment arguing that Plaintiff is not entitled to recover damages for lost oil production. Viewing the evidence in a light most favorable to Plaintiff as the Court must in deciding Defendants' motion for partial summary judgment, the pertinent facts may be summarized as follows:

Defendants dumped produced water, hauled from the Tecolote No. 1 well, into the workover pit located at the Experimental well in late 2004 or early 2005. On October 22, 2004, the New Mexico Oil Conservation Division (OCD) issued a Notice of Violation (NOV) to Plaintiff concerning the Experimental well based on an inspection of the well on that same date. The NOV stated that the violation consisted of "No Well Sign (Rule 103). Open workover pit, unlined, undeclared (Rule 50)." The NOV stated that corrective action was due by 11/22/04. Plaintiff's president George Scott did not receive the NOV. He did receive an NOV regarding another well that was inspected at the same time and required corrective action by November 22, 2004, and he believed this other NOV actually referred to the Experimental well. He received the other NOV in late January 2005.

Gerry Guye, the OCD inspector who performed the site inspection upon which the NOV was based, observed no signs of dumping of produced water at the time of his inspection on October 22, 2004. He testified that, if he had seen fluid in the pit, he would have noted that in the NOV. Rule 50 of the OCD's regulations requires that an unlined, undeclared workover pit be

2

closed regardless of whether or not it is contaminated.  N.M. Admin. Code § 19.15.2.50.  The regulations also require closure of any pit within six months after cessation of use.  Id.

George Scott became aware that water had been dumped in the Experimental well pit by early 2005.  The pit had been used in a workover attempt in 2002 before Defendants dumped produced water into the pit from another well site.  During the earlier workover attempt, the pit liner caught fire and was destroyed, but Plaintiff did not replace the liner, cover or close the pit.

Plaintiff first attempted to close the pit sometime between June 2005 and November 13, 2005.  This attempt at closure failed because Plaintiff did not comply with applicable OCD rules for pit closure.  George Scott was in charge of supervision of field operations for Plaintiff but did not review the OCD rules and was not aware they had changed.  After this first attempt to close the pit, Plaintiff submitted to the OCD a form C-144 on December 22, 2005.  That form advised the OCD what Plaintiff planned to do to complete closure on its second attempt.  The form noted that Plaintiff, in its first attempt at closure, had used a vacuum truck to remove the produced water that had been dumped in the pit and then backfilled the pit.  The form proposed to reexcavate the pit to its original depth and then excavate down another ten feet below the original floor of the pit.  Soil samples of the new floor would be taken, and if not contaminated, the pit would be backfilled with clean soil.  All soil removed from the pit would be hauled away and disposed of properly.  The OCD approved this plan, and closure was complete by mid-February 2006.

On November 16, 2005, between the first attempt to the close the pit and the final closure of the pit, Plaintiff submitted a form C-110 to the OCD requesting permission to "workover" or recomplete the Experimental well to achieve oil production.  The OCD denied permission for

3

Plaintiff to workover or recomplete the well because of the pending NOV which had not been remediated.[1]  At that time, Plaintiff was prepared in all ways to perform the workover.

Plaintiff could have performed the workover of the Experimental well after it completed the pit closure in mid-February 2006.  However, one of its working interest owners was not paying his bills.  Additionally, Plaintiff was concerned about the availability of a "pulling unit" necessary for the workover though it had not previously arranged for a pulling unit in November 2005 when it first intended to begin the workover.  Thus, Plaintiff did not request permission from OCD to workover the Experimental well after closing the pit in mid-February 2006.

In July 2006, Plaintiff farmed out the Experimental well to Judah.  Judah completed the workover and the Experimental well is producing oil as of December 2006.  Plaintiff had tried to make a deal with Judah earlier, but the earlier deal fell through.  The farmout agreement finally executed is "quite a bit better" that the original deal that fell through.

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Worrell v. Henry, 219 F.3d 1197, 1204 (10th Cir. 2000).  In ruling on a motion for summary judgment, a Court does not weigh the evidence, but determines whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter

---

[1] It is Defendants' assertion that the denial was based on Plaintiff's failure to remediate the NOV, and Defendants cite to George Scott's deposition in support of this assertion.  Mr. Scott actually testified that the denial was based on Plaintiff's failure to complete clean up of the pit.  I perceive a difference between these assertions because the NOV, on its face, was not issued based on the dumping of produced water in the pit.  However, Plaintiff did not dispute Defendants' version of the facts for purposes of this motion.  Accordingly, I will assume that the denial was based on Plaintiff's failure to remediate the NOV.

4

of law.  Gossett v. Oklahoma ex rel. Bd. of Regents for Langston University, 245 F.3d 1172, 1175 (10th Cir. 2001).  In making this determination, the Court must construe all the facts in the record and reasonable inferences that can be drawn from those facts in a light most favorable to the nonmoving party.  Worrell, 219 F.3d at 1204.

The burden of showing an absence of a genuine issue of material fact falls upon the moving party.  See Adler v Wal-Mart Store, Inc., 144 F.3d 664, 670 (10th Cir. 1998).  However, when the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by pointing out to the Court that there is an absence of evidence to support the nonmoving party's case.  Celotex Corp. v Catrett, 477 U.S. 317, 322-23 (1986); Adler, 144 F.3d at 671.  The nonmoving party must then go beyond the pleadings to set forth specific facts showing that there is a genuine issue for trial sufficient to support a verdict for the nonmovant.  Anderson v Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

**DISCUSSION**

As an initial matter, I note that, in addition to claiming damages for lost oil production on the Experimental well, Plaintiff has claimed damages for lost oil production at the Tecolote St. #1 well and damages generally for lost oil production.  Defendants' motion only addresses Plaintiff's request for lost oil production damages for the Experimental well.  Accordingly, this ruling does not touch upon or affect in any way Plaintiff's request for lost oil production damages at any well other than the Experimental well.

Defendants' first argument for summary judgment blended the issue of causation and the issue of avoidable consequences.  Defendants' reply brief argues that these two issues cannot be

5

discussed separately. I disagree. These are distinct issues both legally and factually, and I will discuss them separately in turn.

Defendants' memorandum in support of its motion discussed the foreseeability of the lost oil production separately from the discussion of causation and focused on the requirement that, under contract law, recoverable damages are those that are foreseeable at the time of contracting. In response, Plaintiff argued that it seeks damages for lost oil production under tort and contract law. Thus, in their reply brief, Defendants blended the avoidable consequences/ proximate cause argument with the foreseeability argument. While I recognize the strong relationship and overlap between the issues of foreseeability and causation, see Herrera v. Quality Pontiac, 73 P.3d 181, 186 (N.M. 2003), I will discuss these issues separately in the manner they were initially presented in Defendants' motion.

I.      THE DOCTRINE OF AVOIDABLE CONSEQUENCES

Defendants argue that, even assuming they improperly disposed of produced water by dumping it in the workover pit at the Experimental well, Plaintiff is not entitled to damages for the lost oil production at that well because Plaintiff could have avoided these consequences and mitigated its damages.

Under the doctrine of avoidable consequences a person injured by the tort of another is not entitled to damages for harm which he could have avoided by the use of due care after the commission of the tort. Rutledge v. Johnson, 465 P.2d 274 277 (N.M. 1970) (citing Restatement of Torts (2d) § 918). "[A] person injured by the tort of another is required to use ordinary care to minimize or lessen the injuries sustained." Lovelace Medical Center v. Mendez, 805 P.2d 603, 620 (N.M. 1991). Avoidable consequences or mitigation of damages is an affirmative defense,

6

and the party asserting it bears the burden of proving it.  Hansen v. Skate Ranch, Inc., 641 P.2d 517, 521 (N.M. App. 1982).

Defendants argue that Plaintiff could have avoided all of its damages from the dumping if it had complied with OCD regulations and properly closed the workover pit after the liner burned in 2002.  Defendants contend that, if Plaintiff had closed the pit at that time, it would not have been in existence and Defendants would not have been able to improperly dispose of produced water at the pit.  This is like arguing that a person who speeds through an intersection on a green light cannot recover for his injuries if he is hit broadside by someone who runs the red light because, if the person with the green light hadn't been speeding, he wouldn't have been in the intersection to be hit.

As Defendants acknowledge, a person injured by the tort of another is not entitled to damages for harm he could have avoided by the use of due care **after** the commission of the tort. Rutledge v. Johnson, 465 P.2d 274, 277 (N.M. 1970) (emphasis added).  Plaintiff had no duty to foretell Defendants' actions and avoid the consequences by preventing Defendants' conduct. Thus, Plaintiff's failure to close the pit before Defendants dumped produced water into it has no effect on Plaintiff's ability to seek damages.

Defendants make several other arguments in support of their contention that Plaintiff cannot recover damages for lost oil production because it failed to mitigate its damages.  For instance, Defendants contend that Plaintiff could have successfully closed the pit during its first attempt and completed a workover shortly thereafter, could have attempted a workover immediately after successfully closing the pit and could ultimately have decided to complete the workover itself rather than enter into a farmout agreement with Judah.  Whether and to what

7

extent these actions would have been reasonable mitigation measures is an issue of fact. Defendants have not shown an absence of a disputed issue of material fact on this affirmative defense and are not entitled to summary judgment with regard to damages for lost oil production at the Experimental well based on the doctrine of avoidable consequences.

II.  IS PLAINTIFF BARRED FROM CLAIMING LOST OIL PRODUCTION DAMAGES FROM THE EXPERIMENTAL WELL BECAUSE NO REASONABLE JURY COULD FIND THAT THESE DAMAGES WERE CAUSED BY DEFENDANTS' CONDUCT?

Defendants argue that, even assuming they improperly disposed of produced water at the Experimental well workover pit, Plaintiff is not entitled to damages for the lost oil production at that well because there is no evidence to support a finding that the dumping caused Plaintiff to lose the oil production. Defendants' argument regarding causation does not distinguish among Plaintiff's various claims, and this makes analysis of the motion difficult because the causation element for the various claims is not necessarily interchangeable.

Defendants' arguments in their motion focus on the proof requirements for contract damages and do not give any in-depth analysis of the proximate cause element for Plaintiff's tort claims or the causation requirements of Plaintiff's other claims.[2] I cannot make an overarching

---

[2] With regard to proximate cause, this element "is concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred." Herrera, 73 P.3d at 186. "An intervening force may interrupt the chain of causation, superceding the original negligence, and thus relieving the defendant of liability." Johnstone v. City of Albuquerque, 145 P.3d 76, 80 (N.M. App. 2006). Any harm which is foreseeable to which a defendant has created or increased the risk is always proximate except where there is such intentionally tortious or criminal intervention that it is not within the scope of risk created by the original negligence. Id. at 83. An intervening force is a superceding cause if it was not foreseeable at the time of the primary negligence. Id.

With regard to Plaintiff's trespass claims, it is not clear that the foreseeability requirement for damages under a contract or the proximate cause requirement for damages under many tort theories applies. See Prosser & Keeton on Torts § 13 at 75-77.

8

legal conclusion that Plaintiff's lost oil production on the Experimental well was not "caused" by Defendants' conduct,[3] and without the benefit of legal authority and argument with regard to Plaintiff's specific claims, I will not further address causation in a general sense. Accordingly, Defendants are not entitled to summary judgment with regard to these potential damages for all of Plaintiff's claims on the basis of causation.

III.   IS PLAINTIFF BARRED FROM CLAIMING LOST OIL PRODUCTION DAMAGES FROM THE EXPERIMENTAL WELL BECAUSE NO JURY COULD FIND THAT SUCH DAMAGES WERE REASONABLY FORESEEABLE.

Defendants' argument in this portion of their motion is clearly directed toward Plaintiff's claim for breach of contract. Unlike the proximate cause element for torts where the issue is whether a harm was foreseeable at the time of the tortious conduct, Johnstone, 145 P.3d at 83, contract damages must be foreseeable at the time of the making of the contract, Torrance County Mental Health Program v. New Mexico Health and Env't Dep't, 830 P.2d 145, 153-54 (N.M. 1992); N.M. UJI 13-843. Generally, in a breach of contract action, the measure of damages is the value of the lost performance promised by the breaching party less any costs avoided by the non-breaching party. Torrance County Mental Health Program, 830 P.2d at 153. In addition to these general damages, a party may be able to recover special damages for other losses that were foreseeable at the time of the making of the contract. Id. Special damages may be recoverable if the damages were a natural and probable consequence of the breach and the breaching party reasonably knew or should have anticipated the damages at the time of the contract from the facts and circumstances. Jones v. Lee, 971 P.2d 858, 864 (N.M. App. 1998). Parties are presumed to

---

[3]In any event, causation is generally an issue of fact. See Johnstone, 145 P.3d at 80 (the issue of proximate cause is a question of fact).

have contemplated the ordinary and natural incidents or consequences of nonperformance of the contract. Id. Whether losses are foreseeable is generally an issue of fact. See N.M. UJI 13-843.

Plaintiff's request for the lost oil production at the Experimental well is clearly a request for special damages because the subject of the contract was the removal and disposal of produced water from producing well sites and the Experimental well was shut in at the time of the formation of the contract. Thus, the value to Plaintiff of Defendants' performance of the contract did not encompassed the future oil production at the Experimental well, and such damages do not fall within the general measure of damages under the contract. As such, these damages are only recoverable if they were foreseeable at the time of the formation of the contract.

Defendants contend that the lost oil production at the Experimental well was not a foreseeable result of a breach of the contract at the time the contract was made. Plaintiff argues that whether the lost oil production was a foreseeable loss at the time of contract formation depends on whether Defendants' foreman intended to breach the contract at the time of formation.

It is undisputed that, after Defendants allegedly disposed of produced water improperly at the Experimental well workover pit, Plaintiff attempted to close the pit and failed because it did not comply with OCD regulations for pit closures. When Plaintiff first sought to workover the Experimental well in November 2005, they were denied permission from the OCD. This denial was based on Plaintiff's failure to remediate the NOV which, on its face, had nothing to do with the improper disposal of produced water at the site. Even if the NOV was based on the improper disposal of produced water such that the OCD's denial of Plaintiff's request to workover the Experimental well was connected to the improper disposal, the facts show that the pit was

10

properly closed and the NOV remediated in mid-February 2006 and Plaintiff made no further request for permission to workover the Experimental well.  Plaintiff states that it did not attempt a workover at that time because one of its working interest owners was not paying his bills and because it was concerned about the availability of certain equipment.  Thus, by Plaintiff's own admission, its inability to perform the workover after mid-February was due to problems unrelated to the improper disposal of produced water at the Experimental well.  More than four months later, Plaintiff farmed out the Experimental well to Judah.

In order to submit the issue of these special damages to a jury, these facts would have to be susceptible to a reasonable interpretation that, at the time Plaintiff and Defendants entered into their contract, it was a natural probable consequence that, in the event Defendants breached the contract by disposing of produced water at the Experimental pit, (1) Plaintiff would fail to follow OCD regulations in its attempt to close the Experimental pit such that closure was delayed by several months; (2) Plaintiff would then have a working interest owner failing to pay his bills and would be concerned about the availability of a pulling unit; (3) Plaintiff would, as a consequence of these other unfortunate events, farmout the Experimental well.  Even assuming that Defendants' foreman intended to breach the contract at the time of its formation, these "consequences" do not naturally and ordinarily flow from such a breach.  There were no facts and circumstances at the time of the contract formation that made these subsequent events foreseeable.  No reasonable jury could find that the lost oil production was a foreseeable loss at the time of the making of the contract.  Accordingly, Defendants are entitled to summary judgment for lost oil production damages at the Experimental well for Plaintiff's breach of contract claim.

**CONCLUSION**

IT IS THEREFORE ORDERED that Defendants' Motion for Partial Summary Judgment as to NGX Company's Claim for Lost Oil Production (Doc. 133) is hereby GRANTED IN PART in that Defendants are granted summary judgment with regard to damages for lost oil production at the Experimental well for Plaintiff's breach of contract claim.

IT IS FURTHER ORDERED that Defendants' Motion for Partial Summary Judgment as to NGX Company's Claim for Lost Oil Production (Doc. 133) is otherwise DENIED.

_____
UNITED STATES DISTRICT JUDGE