IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NGX COMPANY,

    Plaintiff,

vs.                                                                                          Civil No. 05-1120 WJ/RLP

G.B. PETROLEUM SERVICES, L.L.C.,
GREAT BASIN PETROLEUM SERVICES, L.P.,
and GREAT BASIN PETROLEUM SERVICES, INC.,

    Defendants.

**MEMORANDUM OPINION AND ORDER ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ON SLANDER OF TITLE CLAIMS**

THIS MATTER comes before the Court pursuant to Defendants' Motion for Partial Summary Judgment as to NGX Company's Claims for Slander of Title and Civil Conspiracy to Slander Title (Doc. 136). Having reviewed the submissions of the parties and being fully advised on the relevant law, I conclude that the motion is not well taken and is accordingly denied.

**BACKGROUND**

Plaintiff's Second Amended Complaint alleges that Defendants had a contract with Plaintiff to haul produced water from NGX wells, that Defendants improperly disposed of produced water in one of NGX's workover pits and that Defendants subsequently charged Plaintiff for hauling the water that had been disposed of improperly. According to Plaintiff, Defendants also charged Plaintiff more than the agreed amount for other water hauling. Plaintiff alleges that Defendants wrongfully filed a lien against Plaintiff's oil and gas lease when Plaintiff

refused to pay for the improper hauling and disposal or other charges above the agreed amount. The causes of action brought by Plaintiff include claims for slander of title and civil conspiracy to slander title. Also pleaded is a claim for equitable relief in which Plaintiff asks that the lien filed by Defendants against its oil and gas lease and its wells be released. Viewing the evidence in a light most favorable to Plaintiff as the Court must when ruling on Defendants' motion for summary judgment, the facts may be summarized as follows.

G.B. Petroleum Services, Inc. ceased to exist on December 30, 2002 when it converted into Great Basin Petroleum Services L.P. G.B. Petroleum Services L.L.C. is a general partner of Great Basin Petroleum Services, L.P. Both Great Basin Petroleum Services L.P. and G.B. Petroleum Services L.L.C. are foreign entities formed under the laws of Texas.

Plaintiff did not file a separate action to quiet title with regard to Defendants' lien. On June 24, 2005, Defendant Great Basin Petroleum Services, L.P. acting through Defendant G.B. Petroleum Services, L.L.C. filed its claim of lien against Plaintiff in the records of Eddy County, New Mexico. The claim of lien was in the amount of $46,002.12, together with interest as provided by law, costs and attorneys' fees.

Jose Molina is a limited partner of Great Basin Petroleum Services, L.P. and Vice President of G.B. Petroleum Services, L.L.C. He is responsible for management of the office and financial matters for Defendants. He signed the claim of lien that was filed in Eddy County. According to Defendants, Jose Molina believed, at the time he signed the claim of lien, that Plaintiff owed Defendants $46,002.12. Plaintiff disputes this and provides evidence that, at the time the lien was recorded, Defendants were aware that the lien was being filed for payment of services that Defendants had not performed in accordance with the contract between the parties.

It is undisputed that the amount of the lien, $46,002.12, exceeds any amount that Plaintiff might owe to Defendants which Defendants now state is $21,900.51. Defendants contend that the error in amount was an accidental accounting error of which Jose Molina was not aware until March 2006. At the time the lien was filed, the clerks in Defendants' office tabulated the amounts due from Plaintiff and arrived at the amount of $46,002.12. Jose Molina reviewed that tabulation to make sure the total was correct. Jose Molina makes it a practice to rely on the clerks in the office to tabulate the amounts due from customers.

Plaintiff disputes that it owes any money to Defendants.[1] For the sake of argument however, Plaintiff shows that, at the time the lien was filed, Jose Molina (1) was aware that Defendants regularly delivered invoices to Plaintiff for payment after Plaintiff had already paid for the services invoiced;[2] (2) was aware that Plaintiff had paid Defendants $19,456.69; (3) was aware that this payment was received at a time when Defendants had only provided Plaintiff with an invoice for $8,189.93; and (4) did not credit Plaintiff's account with the difference between the $19,456.69 payment and the $8,189.93 invoice because there were no outstanding invoices on which to credit the amount. Based on this evidence, Plaintiff contends that there is an issue of fact with regard to whether Jose Molina willfully recorded the lien for the wrong amount by choosing to disregard the known accounting errors that resulted from Plaintiff's pre-invoice

---

[1] Defendants misread Plaintiff's response as admitting that Defendants were entitled to file the lien for the lesser amount but Plaintiff clearly maintains its denial of this and only crafts an argument in the alternative.

[2] Defendants' foreman, John Parra, would deliver batches of "work tickets" to Plaintiff, and Plaintiff would make payments to Defendants based on the work tickets before the tickets had been invoiced. Thus, invoices would often represent work tickets for which payment had already been made.

payments. Plaintiff reiterates that, even if Jose Molina was not aware that Plaintiff did not owe the full amount, Defendants were aware that Plaintiff did not owe the money because Defendants had not performed pursuant to the contract between the parties.

In March 2006 when Jose Molina became aware that the amount of the lien was in error, he reported it to John Molina. John and Jose Molina then reported the error to Defendants' attorneys in late March or April 2006. During Jose Molina's deposition, Defendants' counsel asked Plaintiff's counsel if Plaintiff was requesting that an amended lien be filed for the correct amount. Plaintiff's counsel stated that he did not know whether an amendment was required by law, but that Plaintiff would likely make that request if it was the appropriate course of action. After a break, Plaintiff's counsel stated that Plaintiff was not requesting that an amended lien be filed, but suggested that Defendants' counsel do whatever was necessary to best represent his clients. On January 12, 2007, Defendants filed a partial release and amendment of the lien reflecting that the lien is for the amount of $21,900.51.

Plaintiff admits that it contracted with Defendants for Defendants to haul and dispose of produced water from Plaintiff's wells. Defendants did generate invoices and work tickets that Plaintiff did not pay.[3] While Plaintiff alleges that a portion of the water disposed of by Defendants was disposed of improperly, Plaintiff does not contend that all of the unpaid invoices and work tickets were issued for water hauling and disposal where the water was disposed of improperly. Plaintiff does contend that these unpaid invoices reflect charges for water hauling and disposal at

---

[3]Plaintiff has agreed that the invoices and work tickets provided as evidence by Defendants are business records that meet the hearsay exception.

greater than the agreed contract price and included disposal fees and fuel surcharges that Plaintiff never agreed to pay.

Plaintiff does not contend that the lien against the Sandpoint Lease affected any attempt to sell the lease by causing a buyer to back out of a sale or reduce its offering price.

Defendants filed the instant motion for summary judgment with regard to Plaintiff's claims of slander of title and civil conspiracy to slander title. With regard to the claim for slander of title, Defendants argue that Plaintiff cannot show that the lien at issue was recorded willfully and with malice. Defendants also argue that they were entitled to file the lien because Plaintiff owes them at least a portion of the amount of money that was not paid. Finally, Defendants assert that Plaintiff's slander of title claim must fail because special damages are an element of the claim, and Plaintiff has no evidence of special damages resulting from the alleged slander of title.

With regard to the claim of civil conspiracy to slander title, Defendants argue that the Defendant entities cannot, as a matter of law, conspire with each other because of the agency relationship between them. Defendants also contend that, because the slander of title claim fails for the reasons stated above, the civil conspiracy claim must also fail.

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Worrell v. Henry, 219 F.3d 1197, 1204 (10th Cir. 2000). The burden of showing an absence of a genuine issue of material fact falls upon the moving party. See Adler v Wal-Mart Store, Inc., 144 F.3d 664, 670 (10th Cir. 1998). However, when the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by pointing out to the

5

Court that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v Catrett, 477 U.S. 317, 322-23 (1986); Adler, 144 F.3d at 671. The nonmoving party must then go beyond the pleadings to set forth specific facts showing that there is a genuine issue for trial sufficient to support a verdict for the nonmovant. Anderson v Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). In ruling on a motion for summary judgment, a Court does not weigh the evidence, but determines whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Sierra Club v. El Paso Gold Mines, Inc., 421 F.3d 1133, 1150 (10th Cir. 2005). In making this determination, the Court must construe all the facts in the record and reasonable inferences that can be drawn from those facts in a light most favorable to the nonmoving party. Worrell, 219 F.3d at 1204.

**DISCUSSION**

I.   DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S SLANDER OF TITLE CLAIM BECAUSE THERE IS A DISPUTED ISSUE OF FACT WITH REGARD TO EACH ELEMENT OF THE CLAIM.

Defendants' motion argues that they are entitled to summary judgment on Plaintiff's slander of title claim because Plaintiff cannot establish a disputed issue of fact with regard to each element of its claim. "One who maliciously publishes false matter which brings in question or disparages the title to property, thereby causing special damages to the owner, may be held liable in a civil action for damages for slander of title." Jemez Prop., Inc. v. Lucero, 608 P.2d 157 (N.M. App. 1980).

    A.    There is a Disputed Issue of Fact With Regard to Whether Defendants Recorded the Oil and Gas Lien Wilfully and With Malice

6

Defendants contend that there is no evidence that they recorded the oil and gas lien wilfully and with malice. Defendants offer evidence of a lack of malice in the form of Jose Molina's deposition testimony that he believed in good faith, at the time he caused the lien to be filed, that Plaintiff owed Defendants $46,002.12. In opposition, Plaintiff offers evidence from which a reasonable fact finder could decide that Jose Molina's testimony is not credible. Accordingly, there is a factual dispute as to whether the lien was filed wilfully and with malice.

B.  There is a Disputed Issue of Fact With Regard to Whether Defendants Were Entitled to File the Lien

Defendants urge that, as a matter of law, they were entitled to file the lien for some amount of money even if they filed it for the wrong amount and, thus, the lien was not filed wilfully and with malice.[4] Plaintiff counters that it did not owe Defendants any amount of money because, in addition to improperly disposing of produced water, Defendants charged Plaintiff for hauling and disposal at a rate greater than the contract price. Obviously, there is a disputed issue of fact as to whether Plaintiff owed Defendants any money. Thus, it cannot be said as a matter of law that Defendants were entitled to file the lien.

C.  It Cannot Be Concluded, as a Matter of Law, the Plaintiff Cannot Prove Special Damages

Defendants argue that Plaintiff cannot prove special damages, an essential element of a claim for slander of title, because Plaintiff never filed a separate action to "quiet title" and has no

---

[4]Defendants' argument implies that, if they were entitled to file the lien for any amount of money at all, the filing of the lien could not give rise to a claim for slander of title regardless of the amount of money set forth in the lien. The theory behind the argument seems to be that the existence of the lien itself creates the cloud on the title whether the amount of the lien is one dollar or a million dollars. Defendants did not fully develop this argument or provide legal authority to support it. Thus, I do not address the argument herein.

7

evidence of any attempt to sell the oil and gas lease that was affected by the lien. Special damages are an element of a claim for slander of title. See Garver v. Public Serv. Co. of New Mexico, 421 P.2d 788, 795 (N.M. 1966); Den-Gar Enter. v. Romero, 611 P.2d 1119, 1124 (N.M. App. 1980). Attorneys' fees and other costs for an action to defend against the slander and remove the cloud to title are special damages, and an action to remove the cloud on a title may be joined with the action for slander of title. Den-Gar Enter., 611 P.2d at 1124.

In this case, Plaintiff has pleaded an equitable claim to cancel the oil and gas lien. This claim qualifies as a claim to remove the cloud on the title to Plaintiff's oil and gas lease. If Plaintiff prevails on this claim, it will be able to prove special damages for purposes of its slander of title claim by showing the costs incurred to remove the cloud on the title.

Because there is a disputed issue of fact with regard to each element of Plaintiff's claim for slander of title, Defendants are not entitled to summary judgment with regard to this claim.

## II. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM OF CIVIL CONSPIRACY

Plaintiff alleges in its Second Amended Complaint that the Defendants conspired with one another to slander the title to Plaintiff's oil and gas lease. Defendants contend they are entitled to summary judgment on Plaintiff's claim of civil conspiracy to slander title because the claim for slander of title must fail and because, as a matter of law, the Defendants could not conspire with one another. As already noted, Defendants are not entitled to summary judgment on Plaintiff's slander of title claim. Thus, the claim for civil conspiracy to slander title does not automatically fail as a result. The Court will thus address Defendants' argument that they could not conspire with one another because Defendant G.B. Petroleum Services L.L.C. was acting in its capacity as

8

an agent and general partner for Defendant Great Basin Petroleum Services, L.P. when it filed the lien.

In order to establish a claim for civil conspiracy, a plaintiff must show (1) that a conspiracy between two or more individuals existed; (2) that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and (3) that the plaintiff was damaged as a result. Silva v. Town of Springer, 912 P.2d 304, 310 (N.M. App. 1996). Several courts from jurisdictions other than the state courts of New Mexico have determined that, for purposes of an action for civil conspiracy, a corporation or other business entity cannot conspire with its agents acting in their official capacities on behalf of the entity. See E.E.O.C. v. MTS Corp., 937 F.Supp. 1503, 1513 n.3 (D.N.M. 1996) ("Agents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage."); Zelinger v. Uvalde Rock Asphalt Co., 316 F.2d 47, 52 (10th Cir. 1963) (noting that under Colorado law a corporation and its employee do not constitute the 'two or more persons' required for a civil conspiracy); Elliott v. Tilton, 89 F.3d 260, 265 (5th Cir. 1996) (noting that under Texas law that "the acts of a corporate agent are the acts of the corporation, and a corporation cannot conspire with itself."). These courts have essentially applied the "agent's immunity rule" to causes of action for civil conspiracy. See Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc., 32 Cal. Rptr.3d 325, 341 (Cal. App. 2005).

While no New Mexico state court has addressed the agent's immunity rule with regard to the first element of a civil conspiracy claim, the New Mexico Court of Appeals concluded in Ettenson v. Burke, 17 P.3d 440, 446-48 (N.M. App. 2001) that agents only have a qualified

9

rather than an absolute immunity or privilege to interfere with the contracts of their principal corporations. The court also concluded that the qualified privilege is an affirmative defense for which the defendant bears the burden of proof. Id. at 448. The New Mexico Supreme Court recently adopted the analysis of the New Mexico Court of Appeals on this issue in Deflon v. Sawyers, 137 P.3d 577, 581 (N.M. 2006). Based on these decisions, I conclude that New Mexico courts would recognized the agent's immunity rule as a bar to a civil conspiracy claim alleging a conspiracy between a business entity and one of its agents, but the alleged conspirators would have the burden of proving that the agent was acting in good faith and in the best interests of the business entity principal.

Defendants' argument that it is entitled to summary judgment on the civil conspiracy claim is based on an application of absolute immunity for an agent acting within the scope of its authority. Because Defendants did not argue or provide undisputed facts with regard to the qualified privilege, they did not meet their burden to show that there is no disputed issue of material fact on this issue. Accordingly, they are not entitled to summary judgment on the civil conspiracy claim.

**CONCLUSION**

IT IS THEREFORE ORDERED that Defendants' Motion for Partial Summary Judgment as to NGX Company's Claims for Slander of Title and Civil Conspiracy to Slander Title (Doc. 136) is hereby DENIED.

                                                               _____
                                                               UNITED STATES DISTRICT JUDGE